Mary L. DOSS, et al., Plaintiffs,

v.

James H. LONG, et al., Defendants.

Civ. A. No. C81–229R.

United States District Court,
N. D. Georgia,
Rome Division.

Dec. 17, 1981.

Gloria Einstein, Waycross, Ga., John Riemer, Dalton, Ga., Robert Remar, Douglasville, Ga., William J. Cobb and John Cromartie, Atlanta, Ga., David A. Webster and Gary Leshaw, Atlanta, Ga., for plaintiffs.

Sam F. Little, Little & Adams, Dalton, Ga., for defendant James H. Long.

R. M. Bernhardt, Atlanta, Ga., for defendant Georgia Courts of Limited Jurisdiction, Inc.

Frank P. Samford, III, Moore, Samford & Moore, Decatur, Ga., for defendant Sarge Mashburn.

M. C. Pritchard, Waycross, Ga., for defendant Hugh Allen.

Larry D. Woods, Woods, Bryan, Woods & Watson, Nashville, Tenn., for defendant Glen Pelham.

## ORDER

HAROLD L. MURPHY, District Judge.

Trial by battle, the ordeal, and compurgation are no longer trusted as competent fact-finding techniques in trial courts. The plaintiffs in this case challenge the fee system of Georgia's justice of the peace courts and certain municipal courts as another impediment to trustworthy fact-finding.

Before the court are the plaintiffs' motion to certify both a class of plaintiffs and a class of defendants, and defendant Sarge Mashburn's motion to dismiss. The former is granted, the latter denied.

I

## PLAINTIFF CLASS CERTIFICATION

Plaintiffs seek to certify a class consisting of "all those who are now or will in the future be civil defendants in Georgia courts operating under the fee system, and also those threatened with actions in those courts." Two defendants have challenged the propriety of this class. Defendant Glenn Pelham, a Small Claims Court judge singles out plaintiff Linda Waits (a former defendant in his court) and questions whether her situation is similar to other class members: she is the only small claims court defendant; she did not contest the action brought in small claims court; service of process in that court was defective; she still had a right to de novo appeal of the small claims court judgment when the complaint in this Court was filed; the small claims court's fee system is different than justice court's fee system.

Defendant Sarge Mashburn asserts numerous problems with the named parties. However, these alleged flaws relate to standing problems, rather than the named plaintiffs' capacity to serve as class representatives.

### 1. Rule 23(a)(1)

There is no dispute that the class, as defined by plaintiff, satisfies the numerosity requirement of Fed.R.Civ.P. 23(a)(1). With more than 1,000 courts, joinder of all civil defendants is an impossibility.

### 2. Rule 23(a)(2)

Plaintiffs do not challenge the individual judgments entered in their cases. Whether an individual's judgment is based on a doctor bill, a furniture store credit, or a plumber's account is of no significance. Whether the plaintiff was represented by counsel, or appealed the lower court's judgment, or was served with papers properly, is of no consequence. There is only one question presented by this litigation: Is the fee system unconstitutional? The Rule 23(a)(2) requirement that there be questions of law or fact common to the class is satisfied if the Court is in a position to render a broad

remedial order with respect to the class regardless of the individual grievances of the named plaintiffs. The Court has not been asked to decide if service of process was adequate in the case of Linda Waits; nor are the jurisdictional questions raised in the Luthers' case before the Court. The plaintiffs challenge a system, not a particular judgment. *See, Hicks v. Crown Zellerbach Corp.*, 49 F.R.D. 184 (E.D.La.1967); *Johnson v. American Credit Co. of Ga.*, 581 F.2d 526 (5th Cir. 1978).

### 3. Rule 23(a)(3)

The typicality requirement embodied in Rule 23(a)(3) focuses on potential antagonism among class members, and the similarity between the class members' claims and the claims of the representatives. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir. 1975); *Gonzales v. Cassidy*, 474 F.2d 67, 71 n. 7 (5th Cir. 1973). The defendants have identified a variety of trees. The Court, however, sees the forest. There is no reason to suspect that the plaintiffs' claims or legal arguments will be inconsistent. To repeat, they are challenging a system, not any one judgment.

### 4. Rule 23(a)(4)

Fed.R.Civ.P. 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. The defendants do not suggest that either the named plaintiffs or their attorneys can be questioned in this respect.

### 5. Rule 23(b)(2)

Plaintiffs seek injunctive and declaratory relief. As this is a Rule 23(b)(2) class action, the defendants must have acted on grounds generally applicable to the class of plaintiffs. The defendants have been (or will be) the trial judges in each of the plaintiffs' cases, and have been compensated through a fee system. The defendants have "acted," in this respect, on grounds applicable to every plaintiff class member.

All the requirements of Rule 23 being satisfied, the plaintiff class is certified as consisting of all those who are now, or will in the future be, civil defendants in Georgia courts operating under the fee system.[1]

### 6. Standing

Defendant Mashburn's challenge to the plaintiffs' standing is multi-faceted and meritless. The defendant argues that the individual plaintiffs can attack the judgments in Superior Court. He also argues that some of the named plaintiffs are no longer embroiled in lower court proceedings.

With respect to the availability of an appeal to Superior Court, this does not relate to the plaintiffs' standing, but to the question of abstention. The Court will address this issue later.

Although the plaintiffs may not find themselves in any of the defendants' courtrooms today, the Damoclean sword of an outstanding judgment is poised. If these judgments were rendered by courts operating under an unconstitutional system, then the injury is ongoing and continuous. The plaintiffs satisfy the standing requirements as long as they are subject to those judgments. *See, Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The plaintiffs are peculiarly well-suited to bring this action: they are not free from entanglement with the system, nor are they merely anticipating future entanglement. *Cf. Rakes v. Coleman*, 318 F.Supp. 181, 191 (E.D.Va.1970) (alcoholics challenging penal commitment statute); *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala.1966), *aff'd, sub nom. Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (former prisoners challenging segregated prison facilities).

---

1. The plaintiffs requested that "those threatened with actions in those courts" be members of the plaintiff class. The Court is unsure, however, who is doing the threatening. As the plaintiff class is presently composed of all present and future defendants, no additional class members are necessary. The Court defines "present defendants" rather broadly to include those individuals (such as the named plaintiffs) who have suffered a judgment in fee system courts and are now subject to execution or enforcement of the judgment. The discussion on standing, *infra*, elaborates on this issue.

## II

## DEFENDANT CLASS CERTIFICATION

Although not as common as a plaintiff class, defendant classes are not scarce in federal litigation. Defendant classes have appeared in a variety of contexts: *Washington v. Lee*, 263 F.Supp. 327 (M.D.Ala. 1966) (three judge court) (civil rights action brought by victims of segregation); *Kane v. Fortson*, 369 F.Supp. 1342 (N.D.Ga.1973) (three judge court) (election law challenge); *Ruocco v. Brinker*, 380 F.Supp. 432 (S.D.Fla. 1974) (three judge court) (challenge to state mechanics' lien law); *United States v. Trucking Employers, Inc.*, 75 F.R.D. 682 (D.D.C.1976) (civil rights action brought by E.E.O.C.); *Sellers v. Contino*, 327 F.Supp. 230 (E.D.Pa.1971) (challenge to sheriffs' practice of violating Fourth Amendment); *Dudley v. Southeastern Factor and Finance Corp.*, 57 F.R.D. 177 (N.D.Ga.1972) (suit against corporate shareholders); *Advertising Specialty Nat. Ass'n v. F. T. C.*, 238 F.2d 108 (1st Cir. 1956) (F.T.C. proceeding against association of manufacturers); *In re Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.), *appeal dismissed*, 528 F.2d 5 (2d Cir. 1975) (antitrust); *In re Gap Stores Securities Litigation*, 79 F.R.D. 283 (N.D.Cal.1978) (securities). *Technograph Printed Circuits, Ltd. v. Methode Electronics*, 285 F.Supp. 714 (N.D.Ill.1968) (patent infringement).

Defendant class actions have been maintained against state judges on numerous occasions. *See e.g., Callahan v. Wallace*, 466 F.2d 59 (5th Cir. 1972); *Brown v. Vance*, 637 F.2d 272 (5th Cir. 1981); *Hadnott v. Amos*, 295 F.Supp. 1003 (M.D.Ala. 1968), *rev'd on other grds.*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); *Sims v. Frink*, 208 F.Supp. 431 (M.D.Ala.1962) *aff'd, sub nom. Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Kendall v. True*, 391 F.Supp. 413 (W.D.Ky.1975).

The use of a defendant class action is not a recent development, *see, Smith v. Swormstedt*, 57 U.S. (16 How.) 288, 14 L.Ed. 942 (1853), and defendant classes appear in recent Supreme Court cases, *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Lee v. Washington, supra* (Court expressly affirms class certification); *Reynolds v. Sims, supra.*

Despite the abundance of case law on the subject, the defendants argue not only that they are unsuitable class representatives, but that a plaintiff class may not sue a defendant class under the 23(b)(2) rubric.

Rule 23 begins, "One or more members of a class may sue *or be sued . . .*" Certainly, the drafters envisioned defendant classes, and the scholarly commentators have recognized the device's utility. 7 Wright & Miller, Federal Practice and Procedure, § 1770 (1972); 3B Moore's Federal Practice, ¶ 23.-40[6] (1981); Note, *Federal Rules of Civil Procedure 23: A Defendant Class Action With a Public Official As The Named Representative*, 9 Val.L.Rev. 357 (1975); Note, *Defendant Class Actions*, 91 Harv. 630 (1978). As with any class action, the Court will certify the class if the four requirements of 23(a) are satisfied, and at least one requirement of 23(b) is satisfied.

### 1. Rule 23(a)(1)

The defendant class is composed of one thousand judges, and although they may sing a variety of songs, they march to the beat of an identical drummer. They are all paid a fee for each "service" they perform rather than receiving a salary. The numerosity requirement is certainly satisfied.

### 2. Rule 23(a)(2) and (3)

The defendants uniformly urge that the commonality and typicality tests are not met. Defendant Mashburn refers to "hundreds of special and local acts" which may contain provisions controlling fees. Defendant Georgia Courts of Limited Jurisdiction Inc. also refers to various local laws which differ in respect to (1) which party must bear the cost of the action; (2) how and to whom civil cases are assigned in the lower courts; (3) the subject matter jurisdiction of the courts; (4) the amount of supervision the individual court system is subject to by a higher court. Finally, defendant Pelham identifies numerous fea-

tures of the Walton County Small Claims Court which are different from those of justice of the peace courts.

Plaintiffs are not pioneers in this area of law. In *Brown v. Vance*, 637 F.2d 272 (5th Cir. 1981), the Court outlawed the Mississippi justice court fee system. The Fifth Circuit wrote, "[t]he compensation the justice court judges in Mississippi derive from civil cases depends directly on the volume of cases filed. Creditors could choose, in any county in which suit is proper, which judge to decide their cases. It is reasonable to infer, and the record supports the inference, that creditors would file more frequently in the courts of the judges who tended to favor the plaintiffs." *id.* at 284. This, too, is the gravamen of plaintiffs' cause of action. Although the plaintiffs are not constrained by the *Brown v. Vance* holding (i.e., they may seek a broader decision), that holding is helpful in delineating the class. Under *Brown v. Vance*, the proper defendant class would be composed of all judges who operate in courts which have concurrent jurisdiction with at least one other court, and in which the fee system provides the judge's remuneration. All of the judges who are members of that class are confronted by a common question: Is the fee system unconstitutional? The various distinguishing characteristics asserted by the defendants are, for the most part, inconsequential.[2] Identity of circumstances is not required by Rule 23(a)(2) or (3).

> It would be extremely difficult, if not impossible, to find members of a class to serve as representative defendants in a case, such as this one, where there are not some material differnces in the physical facilities and operations involved. But since the rule requires only that there be questions of law and fact common to these defendants and the members of the class which they represent . . . then it becomes immaterial whether certain of these class defendants are not otherwise identically situated.

*Washington v. Lee*, 263 F.Supp. 327, 330 (M.D.Ala.1966) (three judge court); *See also, Wilson v. Kelley*, 294 F.Supp. 1005, 1009 (N.D.Ga.), *aff'd* 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968) (three judge court). The defendants argue that commonality has only been found to exist where the public official defendants operated under a single statute. Defendants have not canvassed the cases thoroughly. In *Marcera v. Chinlund*, 595 F.2d 1231 (2d Cir.), *vac. on other grds. sub nom. Lombard v. Marcera*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979), the Court certified a class of defendant sheriffs who denied contact visitation for pre-trial detainness. The Court wrote,

> [t]he challenged behavior of the 42 sheriffs—denial of contact visitation—is identical; it could not be more so were they acting pursuant to statute rather than their own administrative policies. Since declaratory and injunctive relief is sought against identical behavior, we conclude that this case is a proper (b)(2) defendant class action.

*id.* at 1238 n. 10. Similarly, in *Paxman v. Wilkerson*, 390 F.Supp. 442 (E.D.Va.1975), *rev'd on other grds. sub nom. Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1980) (see footnote 6 *infra*), where the Court was confronted with separate but similar policies governing each defendant school board's maternity policy, the Court stated,

> [w]hile the instant matter may indeed present varying facts and circumstances with respect to the individual members of the plaintiff and defendant classes, Rule 23 does not require that all members of the class be identically situated.

*id.* at 447. *See also, Hadnott v. Amos*, 295 F.Supp. 1003 (M.D.Ala.1968), *rev'd on other grds*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969) (various statutes govern the defendants' conduct). Defendants' argument would have more ballast if the plaintiffs were challenging the discretionary conduct of defendants, *e.g., Mudd v. Busse*, 68

---

2. The Court notes, however, that the existence of an assignment procedure would differentiate the system of these courts from that examined

in *Brown v. Vance*. The Court is not prepared to decide the merits of this case, however.

F.R.D. 522 (N.D.Ind.1975) (judicial officers' abuse of discretion in setting bail), or if the action were clearly susceptible to individualized defenses, *e.g., Coniglio v. Highwood Services, Inc.,* 60 F.R.D. 359 (W.D.N.Y.1972) (antitrust action against professional football teams which require season ticket-holders to purchase exhibition game tickets). In this case, however, there is no specific conduct of any judge being challenged. It is not the existence of collegiality between the judges and the creditors which contaminates the system; rather it is the *systemic* incentive to please the creditor-plaintiffs in order to encourage repeat appearances.

The Court in *United States v. Trucking Employers, Inc.,* 75 F.R.D. 682 (D.D.C.1976) carefully studied the use of defendant class actions. In a thorough, and thoughtful opinion, the Court commented on the typicality and commonality prerequisites,

> Even the substantive issues involved in an action on behalf of a class will rarely, if ever, be totally identical.... Where the *claims* or *defenses* raised by the named parties are *typical* of those of the class, differences in the factual patterns underlying the claims or defenses of individual class members will not defeat the action.

*id.* at 688.

Class actions are designed to eliminate, or reduce the need for a multiplicity of identical suits. Obviously, if a class of defendants are sued and there is no common question which unites them, the goal of the class action would not be achieved.

> [A]lthough there need not be identity of claims, there must be common elements of law or facts such that the class action would be an economical way of prosecuting and defending claims.... We recognize, however, that the typicality requirement is not so rigid as to comprehend only similar fact situations.... It would be a better test for typicality to consider whether the types of facts or evidence were typical of the class.

*Walker v. Jim Dandy Co.,* 638 F.2d 1330, 1336 (5th Cir. 1981); *Hebert v. Monsanto Co.,* 576 F.2d 77, 80 (5th Cir. 1978).

There are, it is assumed, many differentiating characteristics among the justices of the peace and other defendant class judges, but the opponents of class certification have been most reluctant to identify any material differences. In response to the motion for class certification, the time was ripe for defendants to at least identify their unique or incompatible defenses; to identify antagonistic interests. No such showing was made.

> If the class action simply challenges the facial validity of the law, as opposed to the manner in which it is administered or enforced, there is by definition only one issue at stake perfectly common .to all class members.

91 Harv. at 643–44.

If the defendants establish at a later date that certain judges operate under a system which is not infected with the alleged constitutional flaw, the Court can modify the class definition, and may decertify the class if necessary. *See Trucking Employers, supra,* at 689 n. 2.

*3. Rule 23(a)(4)*

Defendants argue vigorously that, the named defendants are not suitable representatives of the class. It is unusual, as one commentator noted, for one side to select the generals for the enemy's army. Z. CHAFFEE, SOME PROBLEMS OF EQUITY 237 (1950). Professor Wright observed, "[i]t might appear that closer scrutiny is necessary in determining the adequacy of the representation of a defendant class because of the risk that plaintiff will seek out weak adversaries to represent the class. There is little evidence of abuse in the reported decisions, however." Wright & Miller, *supra,* at § 1770.

Certainly, the defendants' unwillingness to serve as champions for the justices of the peace and small claims court justices does not entitle them to relinquish that post. "[T]o permit ·them to abdicate so easily would utterly vitiate the effectiveness of the defendant class action as an instrument for correcting widespread abuse." *Marcera, supra* at 1239. Rule 23(a)(4) does not re-

quire a voluntary representative, but merely an adequate one. *id.* "This factor of 'desire' as opposed to ability should not be given more than token weight." *Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497, 499 (N.D.Ill.1969).

The Court's duty to ensure that the named defendants are adequate representatives of the class is designed to protect the absent members. In a case such as this, there should be no added burden on the named defendants. The defendants have already revealed their intention to defend this suit energetically. "When the court can fairly conclude that by pursuing their own interests vigorously the named representatives will *necessarily* raise all claims or defenses common to the class, representativeness will be satisfied." *Trucking Employers, supra,* at 688; *See also,* 91 Harv.L. Rev. at 639–40.

In addition, courts have examined the substance of the action in assessing the interests of absentees:

> The interests of the absent parties were fairly insured because there are no money damages, there is no factual issue to be resolved, counsel for the named parties adequately represent the interests of the classes, . . . and the legal constitutional issue is not complex in light of recent Supreme Court decisions.

*Lynch v. Household Finance Corp.,* 360 F.Supp. 720, 722 n. 3 (D.Conn.1973); *See generally, Marcera v. Chinlund, supra,* at 1239. In this case, similarly, there are no money damages, there are no apparent factual issues to be resolved, defendants' counsel [3] are eminently qualified, and the decision in *Brown v. Vance* certainly clarifies the constitutional issues.[4]

In those cases where defendant class certification was denied on the "representative" criterion, there is sparse explanation. *See e.g., Mason v. Garris,* 360 F.Supp. 420 (N.D.Ga.1973) (three judge court). It is inconceivable that any antagonism would arise among the members of the class. The interests of all class members coincide with respect to the substantive issues in the suit. "Only a conflict that goes to the essential subject matter of the litigation—to the heart of the controversy—will defeat a claim of representative status." *Trucking Employers, supra,* at 688. The lodestar of this litigation is the constitutionality of the fee system. The representative need only address that issue. If there are judges who are paid a salary, they are not members of the defendant class; all judges who are paid a fee can be represented adequately by the named defendants.

### 4. Rule 23(b)(2)

Having concluded that the numerosity, commonality, typicality, and representative tests of Rule 23(a) have been met, the Court turns to Rule 23(b) to determine whether a defendant class can be maintained under Rule 23(b)(2). That rule provides,

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

Numerous courts have wrestled with this language in the context of a defendant class. In the archetypal defendant class action, the party opposing the class (the plaintiffs) have not "acted or refused to act." The defendants, generally, are charged with having "acted," and it is their conduct which the plaintiffs seek to enjoin. Nevertheless, despite cautionary words from the Solomons of Civil Procedure, 7A Wright & Miller, *supra,* § 1775 (Supp.1981); 3B Moore's, *supra,* ¶ 23.40[6], defendant class actions have been certified under Rule

---

3. Although the Court is not acquainted with each attorney who has made an appearance, their efforts so far have evidenced adequate preparation. Frank Samford, the attorney for Sarge Mashburn, was a professor of constitutional law at one of Georgia's leading law schools.

4. Of course, this Court is still bound by Fifth Circuit precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

23(b)(2).[5] Courts have employed three methods to overcome the language problem: (1) ignore it; (2) find conduct performed by the plaintiffs; (3) decide that Rule 23(b)(2) should cover defendant classes. The first method is exemplified by various cases which certify a (b)(2) defendant class with no discussion. *See e.g., Wilson v. Kelley,* 294 F.Supp. 1005 (N.D.Ga.1968) (three judge court); *Kane v. Fortson,* 369 F.Supp. 1342 (N.D.Ga.1973) (three judge court); *Paxman v. Wilkerson,* 390 F.Supp. 442 (E.D.Va. 1975).[6]

The second approach—finding action on the part of the plaintiffs—has produced some interesting results. *See e.g., United States v. Trucking Employers, supra,* at 692–93 (the common act on the part of the plaintiffs is bringing suit against the defendants); *Kidd v. Schmidt,* 399 F.Supp. 301, 303–04 (E.D.Wis.1975) (three judge court) (plaintiffs brought suit); *Research Corp. v. Pfister Associated Growers, Inc.,* 301 F.Supp. 497, 500 (N.D.Ill.1969) (plaintiffs notified defendants of alleged patent infringement; threatened suit; brought suit); *Technograph Printed Circuits, Ltd. v. Methode Electronics,* 285 F.Supp. 714, 723 (N.D.Ill.1968) (plaintiffs obtained patents).

The third device, although short on analysis, is perhaps the most intellectually honest: although Rule 23(b)(2) is, on its face, inapplicable to defendant classes, the courts are simply unwilling to deprive the plaintiff of this useful measure. In *Hopson v. Schilling,* 418 F.Supp. 1223 (N.D.Ind.1976), for example, the decision of the court, which was otherwise a paragon of thoroughness and analytical care, dismissed the arguments of the opponents of 23(b)(2) certification summarily: "The Rule 23(b)(2) class is particularly appropriate for the assertion of class-based civil rights. Although the rule

refers to 'the party opposing the class,' the rule may be extended to cover a defendant class which has acted on grounds generally applicable to a plaintiff class." *id.* at 1237. Similarly, in *Marcera v. Chinlund, supra,* the court concluded, "although a literal reading of the rule might indicate otherwise ... it is now settled that 23(b)(2) is an appropriate vehicle for injunctive relief against a class of local public officials." *id.* at 1238. In *Redhail v. Zablocki,* 418 F.Supp. 1061 (E.D.Wis.1976), *aff'd sub nom. Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), the Court concluded that (b)(2) defendant class actions are consistent with the interests of judicial administration and justice which Rule 23 is meant to further.

This Court agrees with the "reasoning" of *Marcera* and *Hopson. See also,* 91 Harv. L.Rev. at 634 & n. 23; 9 Val.L.Rev. at 391 n. 128 and cases cited therein. There is no need to perform linguistic acrobatics, or to designate the plaintiffs' complaint as the "action" by the party opposing the class. With only isolated exceptions, *e.g., Mudd v. Busse,* 68 F.R.D. 522 (N.D.Ind.1975), the courts universally have allowed plaintiffs to maintain (b)(2) class actions against a class of defendants. Indeed, the Advisory Committee Note referred to the vast body of civil rights case law to illustrate the scope of Rule 23(b)(2). 3 B. Moore's, *supra,* ¶ 23.01[10.–2]. This case fits the mold.

### 5. The Rubik Cube

The last issue raised regarding the motion for class certification involves a problem unique to bilateral plaintiff class—defendant class litigation. It is the Rubik Cube puzzle: each plaintiff does not have a cause of action against each defendant. In other words, Mary Doss (for example) does

---

**5.** The Fifth Circuit expressly declined to rule on this issue recently, despite the earlier three-judge court decision in *Washington v. Lee, supra. Greenhouse v. Greco,* 617 F.2d 408, 413 n.6 (5th Cir. 1980).

**6.** The *Paxman* decision was reversed on this point by the Fourth Circuit, *Paxman v. Campbell,* 612 F.2d 848 (4th Cir. 1980), the Court holding that the language of (b)(2) simply could

not accommodate a defendant class. However, the Court was tyrannized by a seemingly rigid formula. Yet, as noted in the text, the vast majority of cases has kept the language in its proper perspective: as servant and not master of the purpose of the Rule. Rule 23(b)(2) was designed to facilitate broad class-wide relief, particularly in the civil rights field. 3B Moore's, *supra,* ¶ 23.01[10.–2]."

not have a cause of action against Hugh Allen. Whether this problem is analyzed in terms of standing, typicality, or commonality, it does not foil this action.

Defendant Georgia Courts of Limited Jurisdiction, Inc. cites *Weiner v. Bank of King of Prussia*, 358 F.Supp. 684 (E.D.Pa. 1973) and *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) for the proposition that bilateral class actions are impermissible. But *Weiner, LaMar*, and a parallel decision, *Mudd v. Busse*, 68 F.R.D. 522 (N.D.Ind.1975) do not counsel against the maintenance of this class action. In *Weiner*, the plaintiff asserted numerous causes of action against numerous, and diverse bank defendants. The Court prefaced its holding with the observation that many of the state law claims could not be asserted against the federally chartered banks, and the federal claims could not be asserted against the state banks.

In *LaMar*, the plaintiff attempted to represent a class of all pawn shop customers against every pawn shop in the State of Oregon for violation of the Truth-In-Lending Act. There was no evidence that every pawn shop engaged in the same, or even similar, violations; nor was there any allegation that the plaintiff class was composed of individuals who suffered similar harm.

In *Mudd v. Busse*, the plaintiffs sought to enjoin every judicial officer in the state from exercising improperly, or failing to exercise, their discretion in setting bail. "[T]he defendant class members are charged with various individual policies concerning bail, and various abuses of discretion in setting bail in individual cases." *Mudd, supra*, at 528.

In contrast, in this case, the plaintiffs seek to enjoin one systemic defect in the state judiciary: the fee system. Every plaintiff has suffered a judgment under this system; every defendant makes his or her bread and butter by the fee. Separate legal theories are not advanced by separate plaintiffs against individual defendants, as in *Weiner*. Unrelated violations with separate money damages are not charged to each defendant as in *LaMar*. Particular

conduct on the part of each defendant has no importance, as it did in *Mudd*.

*LaMar* and *Mudd* did not suggest that all class versus class litigation was improper. Both *LaMar* and *Mudd* applauded the bilateral class litigation in *Washington v. Lee, supra*. *Mudd* also approved *Hadnott v. Amos, supra, Rakes v. Coleman, supra*, and *Pennsylvania Ass'n, Ret'd Child. v. Commonwealth of Pa.*, 343 F.Supp. 279 (E.D.Pa. 1972). *LaMar* explained the difference:

Aside from the somewhat broad and accommodating concept of standing in civil rights cases, it is also true that all the defendants were officials of a single state and its subordinate units of government. Their legal relationship distinguishes them from the defendants the plaintiff LaMar and Kinsling seek to envelop in their class action.

*LaMar, supra*, at 469–70. *Mudd* voiced a similar explanation:

[I]n certain instances, where all members of the defendant class were connected by a common "juridical link," a plaintiff class versus a defendant class suit could be appropriate, even though no named plaintiff would have personal claims against most members of the defendant class. Such "juridical links" would most often be found in instances where all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional.

*Mudd, supra*, at 527–28. *See also, Hopson v. Schilling, supra*, at 1237. All the defendants in this case are judicial officers of the state. Although many of the defendants are creatures of local legislation, and their fees set by the county or municipal government, they are as unified as the sheriffs in *Marcera*, and *Washington*, the school board members in *Paxman*, and the probate judges in *Kane*. The juridical link here is the fee system.

Plaintiff's motion to certify plaintiff and defendant classes is GRANTED.

## III

### IMMUNITY, ABSTENTION, AND THE STATUTE OF LIMITATIONS

*1. Judicial Immunity*

 Defendant Mashburn argues that the defendant judges are immune from suit. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) declared that judges were immune from damage actions. A parallel immunity for legislators was established in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Last year, the Supreme Court declared that legislators were immune from § 1983 actions seeking declaratory or injunctive relief. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Defendant contends that *Consumers Union* should be extended into the field of judicial immunity. The Court is not persuaded by this attempt at legal alchemy. *Consumers Union* expressly recognized that judges' robes have never rendered them invulnerable to injunctive and declaratory actions. *id.* at 735, 100 S.Ct. at 1976. *See also, Wood v. Strickland*, 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975); *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir. 1978); *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981).

The purpose of judicial immunity is to insulate judges from personal liability which might skew their decisions and detract from their independence of mind and judgment. Here, however, the plaintiffs' action is designed to remove an impediment to that impartiality. "The grant of injunctive relief in a case like this would not have the *in terrorem* effect on state judges that the threat of a subsequent damage action would have." *Law Students Civil Rights Research Council v. Wadmond*, 299 F.Supp. 117, 123 (S.D.N.Y.1969) (three judge court; Friendly, J. concurring). Since the judges' independence could not be affected by this suit, immunity will not be extended.

> [T]he [judicial immunity] rule is a harsh one, laden with the potential for unredressed wrong. As such, its scope should not be extended beyond that necessary to preserve the judge's independence of mind and judgment, for it is upon the manifest necessity to protect these, and these alone, that the rule rests.

*Sparks v. Duval County Ranch*, 604 F.2d 976, 980 (5th Cir. 1979), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

*2. Abstention*

 Defendant Mashburn suggests that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) requires this Court to abstain. *Younger v. Harris* involved a federal court's interference with an ongoing state court criminal proceeding. Although the *Younger* doctrine has aged considerably since 1971, it has never been extended to a case in which the federal court was not asked to intrude in an ongoing state court procedure; it has never been extended to a case in which the ongoing state procedure did not involve the state; and it has never been extended to a case in which the ongoing state procedure did not involve an important state interest.

The plaintiffs in this case seek to dismantle the system of pay in the defendants' courts. There simply is no state court proceeding involved, and even if there were, the State of Georgia is not a party.

Defendant Mashburn argues that the availability of an appeal to the state Superior Courts bars the plaintiffs from repairing to the federal court. However, the issue raised in this Court has already been decided by the Georgia Supreme Court. *Allen v. State*, 240 Ga. 567, 242 S.E.2d 61 (1978). The branch of abstention announced by *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) does not require deference to the state courts twice.

*3. Statute of Limitations*

 Defendant Mashburn argues that the six month statute of limitations prescribed by Ga.Code § 24–703 (suits against justices of the peace) bars this action. That section of the Code envisions a suit by an individual plaintiff against an individual de-

fendant for a particular injury. *See e.g., McDaniel v. Anderson*, 155 Ga.App. 942, 274 S.E.2d 56 (1980). It has no application in a case such as this where a class of plaintiffs seeking declaratory and injunctive relief challenge the fee system which supports more than a thousand judges.

Furthermore, the Georgia Court of Appeals has identified § 24–701 et seq. with the municipal ante litem notice provision, Ga.Code § 69–308. *McDaniel, supra*, at 942, 274 S.E.2d 56. The Fifth Circuit has held that the procedures required by § 69–308 cannot be enforced in a § 1983 civil rights action. *Ehlers v. City of Decatur*, 614 F.2d 54 (5th Cir. 1980).

ACCORDINGLY, plaintiffs' motion to certify a plaintiff class and a defendant class is GRANTED; defendant Mashburn's motion to dismiss is DENIED.